# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| MARVIN SAWYER, ET AL., | ) | |
| Plaintiffs, | ) | Case No. 2:09CV00028 |
| v. | ) | **OPINION AND ORDER** |
| H. LEE NOBLE, ET AL., | ) | By: James P. Jones |
| | ) | Chief United States District Judge |
| Defendants. | ) | |

*Rob Starnes, Kingsport, Tennessee, for Plaintiff; Henry S. Keuling-Stout, Keuling-Stout, P.C., Big Stone Gap, Virginia, for Defendants H. Lee Noble and Major George Hembree; and Kevin O. Barnard, Frith Anderson & Peake, P.C., Roanoke, Virginia, for Defendant Dr. Kaveh Ofogh.*

The plaintiff in this § 1983 case alleges that the defendant jail officials violated his constitutional rights because he did not received narcotic pain medication while incarcerated. For the reasons set forth, I will grant summary judgment in the officials' favor.

I

The plaintiff, Marvin Sawyer, was convicted of a crime in state court and as a result was incarcerated for a sixty-day term in one of the jails operated by the Southwest Virginia Regional Jail Authority ("SWVRJA").[1] He was booked at the

---

[1] The heading of the Amended Complaint indicates that there are three "John Doe" plaintiffs, but there is no other reference to these unidentified persons in that pleading or elsewhere in the record.

Duffield Regional Jail on July 24, 2007. Because he had had shoulder surgery on March 28, 2007, he brought with him Percocet, a narcotic pain medication,[2] that had been prescribed to him by his orthopaedic surgeon. As part of the booking procedure, he was seen by a jail nurse. When Sawyer complained of his shoulder pain, the nurse told him, "[A]s per protocol there [is] no narcotic administration in this facility." (Answers to Pl.'s Second Interrogs., Ex. 17, Progress Notes, July 24, 2007.) Under the medical protocol established by Kaveh Ofogh, M.D., the SWVRJA's Chief Physician, medical staff in the jail may not administer narcotic pain medication unless prescribed by a jail physician, even if the inmate had received a valid prescription for the medication prior to commitment to the jail.[3] Indeed, narcotic pain medications accompanying any new inmate are destroyed.

Moreover, as defendants Noble and Hembree admit, "it is indeed rare" for jail physicians to prescribe narcotic pain medication for an inmate. (Answers to Pl.'s Second Interrogs. 7.) Rebecca France, a nurse who was employed during 2007 and 2008 at the Duffield jail, has submitted an affidavit that it was "exceedingly rare" for

---

[2] Percocet is a brand name for a combination of acetaminophen and oxycodone, used to treat moderate to moderately severe pain. *Physicians' Desk Reference* 1121 (64th ed. 2010).

[3] A written protocol, called "Medication Guidelines for New Arrivals (C-1)," was actually dated after the events in question in this case, but the evidence shows — and the parties do not disagree — that the substance of the unwritten protocol was the same at the time of the plaintiff's incarceration.

narcotic pain medication to be prescribed at the jail. (France Aff. ¶ 11.) The only time she recalled was when it was prescribed for an inmate with a broken jaw. On the other hand, there is a record from the pharmacy used by the Duffield Regional Jail that narcotic pain medication was ordered on twenty-six occasions from 2007 up until August 1, 2009.[4] The plaintiff asserts that the Duffield jail has a 278-bed capacity. (Am. Compl. ¶ 67.)

On July 27, a jail nurse held a telephone consultation with Dr. Ofogh, because Sawyer had stated that he was sick to his stomach and could not eat or sleep. After hearing about Sawyer's history with controlled substances — Sawyer reported that he had been taking five to twelve Percocets per day prior to entering the jail — Dr. Ofogh directed that he be placed on an opiate withdrawal protocol, which meant that he was housed in the jail infirmary, given certain medication, and monitored. On July 31, after Sawyer reportedly was "talking out of his head," another telephone consultation was conduced with Dr. Ofogh, who prescribed Librium and directed that Sawyer be kept in the infirmary for monitoring. (Answers to Pl.'s Second Interrogs., Ex. 17, Progress Notes, July 31, 2007.)

On August 1, Sawyer was seen in person by Dr. Abrokwah, another jail physician, who directed that he be given ibuprofen. The medical records show that

---

[4] The record submitted by the defendants shows that there were two prescriptions for hydrocodone and twenty-four for codeine. (Answers to Pl.'s Second Interrogs., Ex. 16.)

Sawyer had difficulty over the next few days, including fighting with officers, and being placed in a restraint chair.

Sawyer claims that because he was not treated with narcotic pain medication, he suffered unnecessary pain and discomfort and other health problems. He has sued H. Lee Noble, who at the time was the superintendent of the SWVRJA jail system, Major George Hembree, at the time the supervisor of the Duffield Regional Jail, and Dr. Ofogh, the SWVRJA's Chief Physician. His suit, pursuant to 42 U.S.C.A. § 1983 (West 2003), claims that the denial of narcotic pain medication constituted deliberate indifference to his right to be free from cruel and unusual punishment under the Eighth Amendment to the Constitution.[5] He seeks compensatory damages from the defendants for his "mental and physical injuries . . . pain and suffering, and humiliation, embarrassment and emotional distress." (Am. Compl. ¶ 65.)

While Sawyer complains of several different aspects of his medical treatment at the jail in his Amended Complaint, his counsel at oral argument represented that the issue in the case is Dr. Ofogh's protocol denying inmates narcotic pain medication unless prescribed by a jail physician, coupled with the limited prescriptions of such medications by the jail physicians.

---

[5] In his Amended Complaint, the plaintiff also references the Americans with Disabilities Act, but he has not argued any statutory claim as to the pending motions but has asserted only that his constitutional rights were violated.

The plaintiff has also moved for class certification in this action, seeking certification of a class of inmates incarcerated in the jails operated by the SWVRJA who "have been or will be denied adequate medical treatment by being denied narcotic pain medication." (Pls.' Reply 1.)

The defendants Noble and Hembree have moved for summary judgment in their favor. All three defendants oppose class certification. These issues have been briefed and orally argued and are ripe for decision.

II

Summary judgment is appropriate when there is "no *genuine* issue of *material* fact," given the parties' burdens of proof at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see* Fed. R. Civ. P. 56(c)(2). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Id.* at 327. It is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses

from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

Prison officials violate Eighth Amendment rights if they fail to prevent harm to an inmate, "under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For liability to attach, it must be shown that the official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Sawyer claims that defendants Noble and Hembree exhibited deliberate indifference to his serious medical needs. However, there is no evidence that these defendants actually dealt with Sawyer or his medical issues, so that the basis of their individual liability must be that these supervisory officials "tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990).[6]

---

[6] While Dr. Ofogh is not a state employee, a private physician who provides medical services to state inmates acts under color of state law within the meaning of 42 U.S.C.A. § 1983. *West v. Atkins*, 487 U.S. 42, 54 (1988); *Conner v. Donnelly*, 42 F.3d 220, 225 (4th Cir. 1994).

The defendants argue that there is no proof that they had reason to believe that any medical practice at the jail limiting narcotic pain medication was likely to cause the denial of adequate medical care to inmates such as Sawyer. I agree.

Sawyer has presented no evidence, expert or otherwise, that the defendants were likely to have believed that the inmates at the jail were not receiving adequate medical care by virtue of any narcotic pain medication policy put in place by Dr. Ofogh. The policy excluding any narcotic pain medication not prescribed by a jail physician does not on its face appear unreasonable. Certainly there is no evidence that it violates any standard of which a reasonable correctional official would know. It is common knowledge that many persons obtain pain medication prescriptions by fraud or misrepresentation, and it is reasonable to assume that addicts might try to bring their illegally-obtained narcotics into a jail. While a different policy might also be reasonable, there is no evidence here that defendants Noble and Hembree should have believed that Dr. Ofogh's policy denied adequate medical care to inmates under their control.

Moreover, while it is agreed that the jail physicians did not often prescribe narcotic pain medication, there is no evidence from which a reasonable jury could find that the medication practice of the jail physicians should have caused Noble or Hembree to intervene. Are twenty-six prescriptions of pain medication over a two-

and-half-year period in a 278-bed jail unreasonably low? Perhaps, but it would take pure speculation on this record to answer that question.

Finally, there is no evidence whatsoever that defendants Noble or Hembree knew anything about the specific medical care afforded to the plaintiff.

While under-medication of prison inmates may be a serious concern, *see* James McGrath, *Raising the "Civilized Minimum" of Pain Amelioration for Prisoners to Avoid Cruel and Unusual Punishment*, 54 Rutgers L. Rev. 649, 650-51 (2002), this is a case that calls out for expert opinion, of which there is none.[7]

For these reasons, I will grant summary judgment as to the claim for damages against defendants Noble and Hembree.

III

The plaintiff moves for class certification, to which the remaining defendant, Dr. Ofogh, objects. I will deny class certification.

Sawyer seeks class certification pursuant to Federal Rule of Civil Procedure 23(b)(2), which provides that a class action may be maintained if Rule 23(a) is satisfied and

---

[7] When asked about this at oral argument, counsel for the plaintiff responded, "As the case goes forward, we will attempt to consult a jail expert." But as counsel for the defendants replied, that time is now, not later.

> the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Fed. R. Civ. P. 23(b)(2).[8]

Sawyer does not seek injunctive or declaratory relief in this case, so that Rule 23(b)(2) is inapplicable on its face. *See Zimmerman v. Bell*, 800 F.2d 386, 389-90 (4th Cir. 1986) (holding that Rule 23(b)(2) does not apply where the proposed class seeks "essentially monetary relief," but is "limited to claims where the relief sought was primarily injunctive or declaratory"). Even assuming that there are common questions of liability among putative class members in this case, the compensatory damage issues would require individualized treatment, because of the unique medical situation for each inmate. *See Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 330 (4th Cir. 2006).

Moreover, I have serious doubts that the case meets the prerequisites of Rule 23(a) and in particular, the requirement that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In this regard, I should consider the "'zeal and competence of the representative['s] counsel.'" *Monroe v. City of Charlottesville*, No. 3:05cv00074, 2007 WL 2461746, at *2 (W.D.

---

[8] In both of his briefs filed on the class certification issue, Sawyer exclusively relied on Rule 23(b)(2) as the type of class action sought. His Amended Complaint is silent on the type of class action sought.

Va. Aug. 27, 2007) (alteration in original) (quoting *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001), *aff'd*, 579 F.3d 380 (4th Cir. 2009), *cert. denied*, No. 09-795, 2010 WL 757718 (U.S. Mar. 8, 2010). The failure here to consult expert opinion as to the jail's medical policies leads me to believe that the interests of the potential class would not be adequately protected.

III

The plaintiff has also filed a Motion to Compel Discovery, relating to defendants' Noble and Hembree's refusal to answer certain interrogatories. The defendants declined to answer interrogatories which requested them to provide the number of complaints received from inmates regarding being denied narcotic pain medication "during the relevant time period" and the number of times the facility had utilized an "opiate withdrawal protocol" during that period and the percentage of those inmates placed in the protocol who had presented to the jail with "a prior doctor's prescription for narcotics." (Pls.' Mot. to Compel 2.)

The defendants objected to providing answers to these interrogatories on the grounds, inter alia, that the information could only be obtained by a review of the medical records of "the thousands of inmates that have been housed in the jail facility between 2007 and 2009" (Resp. ¶ 3), which would be unduly burdensome.

In light of my decision to grant judgment to these defendants, these interrogatories are moot. In any event, I would not have compelled the defendants to answer these interrogatories, in light of the equal burden to review these records. The plaintiff may have been entitled to review the inmate records himself or copy them at his expense (after establishment of an appropriate confidentiality procedure), but he could not require the defendants to do so.[9] *See* Fed. R. Civ. P. 33(d).

IV

For the foregoing reasons, it is **ORDERED** as follows:

1. The Motion for Summary Judgment (DE 17) is GRANTED and judgment is entered in favor of defendants H. Lee Noble and Major George Hembree;

2. The Motion for Class Certification (DE 19) is DENIED;

3. The Plaintiffs' Motion to Strike (DE 53) is DENIED;

4. The Motion to Compel Discovery (DE 57) is DENIED; and

---

[9] The plaintiff also filed a motion seeking to strike the defendants' reply brief on the motion for summary judgment on the grounds that it set forth alleged "undisputed facts," which had not been set forth in the defendants' initial brief. The plaintiff's point, I assume, is that the brief was not replying to the plaintiff's opposition brief, but raising new matters. While I agree that the reply brief does strike out into new territory, it was relevant to the issues and because the plaintiff had a full opportunity to respond at oral argument, I find there has been no prejudice.

5. The Clerk is directed to set the case for trial as to the remaining defendant.

ENTER: April 28, 2010

/s/ JAMES P. JONES
Chief United States District Judge